**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

MICHAEL F ADOUE                                          CIVIL ACTION

VERSUS                                                         NO:     19-10500

PAUL REVERE LIFE INSURANCE                    SECTION: "T" (4)
COMPANY

**ORDER**

Before the Court is a **Motion to Compel (R. Doc. 53)** filed by the Plaintiff seeking Defendant Paul Revere Life Insurance Company ("Paul Revere") to more fully and completely answer Plaintiff's interrogatories and to produce the documents in response to Plaintiff's requests for production. The motion is opposed. R. Doc. 59. The motion was heard by oral argument via videoconference on July 16, 2020. R. Doc. 65.

I.      **Background**

On May 16, 2020, Plaintiff Michael F. Adoue, a former trial attorney, filed this claim, pursuant to the court's diversity jurisdiction, for disability benefits under an individual insurance policy alleging UNUM Life Insurance Company of America ("UNUM") failed to properly adjust and pay his claim. R. Doc. 1. On August 20, 2020, Plaintiff amended his complaint to add Defendant Paul Revere. R. Doc. 9. Plaintiff alleges that overwhelming evidence supports a finding that he was disabled under the policy terms. *Id.* Plaintiff maintains that he was wrongfully denied his disability insurance benefits where he suffers from debilitating back pain, severe depression and anxiety, and congestive heart failure with left bundle-branch block, and mitral valve prolapse. R. Doc. 53.

On May 8, 2020, Plaintiff originally filed the instant motion to compel seeking, among other things, information pertaining to bias. R. Doc. 32. At the time, the discovery requests and interrogatories remained outstanding. *Id.* In response, Defendant Paul Revere produced some

information. Notwithstanding, where the motion was originally set for submission for May 27, 2020, after the applicable May 8, 2020 discovery deadline, the Court denied the motion as untimely. R. Doc. 45.

On June 25, 2020, the District Judge presiding over this case reopened discovery and extended the applicable discovery period until July 17, 2020. R. Doc. 49. As such, Plaintiff reurged the instant motion seeking information as to employees' financial incentives to deny claims, compensation methods, performance evaluations, and complaints and investigations instituted against Paul Revere. R. Doc. 53.

Defendant Paul Revere maintains this information is not relevant where Plaintiff failed to allege that Paul Revere engaged in a pattern or practice of promptly ad fairly adjusting claims or that its employees had a financial incentive to deny claims. R. Doc. 59. The Defendant also contends while bias may be important to Employee Retirement Income Security Act of 1974 ("ERISA") claims, this is a straightforward contract dispute. *Id.* As such, Defendant seeks an order denying the Plaintiff's motion. *Id.*

## II.     Standard of Review

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2), 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." *Id.* Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

### III. Analysis

#### A. Interrogatory No. 3

Interrogatory No. 3 seeks the identification of the rate of pay, bonuses paid, awards, or other indices of recognition for job performance for persons identified as involved in the decision to terminate Plaintiff's disability benefits. R. Doc. 53-2, p. 4. The Defendant objects on the grounds as vague, overbroad, and disproportional to the needs of the case. R. Doc. 53-2, p. 5. The Defendant also objects to the production of such information on the grounds that it is confidential, proprietary, and violates the rights of third parties as protected by Massachusetts Privacy Statute. *Id.* (citing Mass. Gen. L. c. 214, sec. IB). Notwithstanding, Defendant Paul Revere provided a copy of the

2017 to 2019 Performance Plan Templates, Annual Incentive Plans, and a document entitled "Total Compensation Frequently Asked Questions." R. Doc. 53-1, p. 3.

Plaintiff contends this production is not sufficient where Paul Revere did not produce any of the specific amounts of the compensation and bonuses given to their personnel that were involved in Plaintiff's claim. *Id.* Plaintiff further contends this information is relevant to whether the people involved in Adoue's claim had a financial incentive to find that Adoue was not disabled. *Id.* Plaintiff has since narrowed the scope of information sought to just the past five years from the date of its decision finally denying Adoue's claim. *Id.*

Defendant contends, in addition to the aforementioned documents, it also provided the performance plan templates for People Managers, which would include the Director over the Disability Benefit Specialist and the Director over the Appeals Specialist. R. Doc. 59, p. 5. The Defendant further contends these documents set forth the job goals for these individuals and the criteria on which these individuals' job performance is evaluated, and evidence that pay, bonuses, and job performance evaluations are not related to denying claims. *Id.* As such, Defendant contends, in this situation, production of individual compensation records is not warranted. R. Doc. 59, 6. The Defendant, therefore, maintains its position the production satisfies Plaintiff's request. *Id.*

As Plaintiff points out, many courts have found "salary and bonus incentives are factors that could affect claims determinations and are therefore relevant." *Raab v. Unum Grp.*, No. 2:10-CV-186, 2011 WL 12614882, at *1-2 (S.D. Ohio June 6, 2011) (internal quotations omitted) (affirming Magistrate Judge's decision that thirteen individuals' salary be produced). Notwithstanding, those cases have noted the relevance in connection with Plaintiff's bad faith claim. *See Shah v. Metro. Life Ins. Co.*, No. 2:16-CV-1124, 2018 WL 2309595, at *10 (S.D. Ohio

4

May 22, 2018) (granting motion to compel to extent bonus plans for the decision makers show an interest in the outcome of a decision adverse to plaintiff); *Nye v. Hartford Acc. & Indem. Co.*, No. CIV. 12-5028-JLV, 2013 WL 3107492, at *12 (D.S.D. June 18, 2013) ("qualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim.").

In addition, while this information is sometimes compelled in ERISA cases by courts in this circuit, those courts have specifically noted its relevance to the insurer's conflict of interest in both administering and insuring the plan. *Pylant v. Hartford Life & Accident Ins. Co.*, No. 3-05-CV-0379-G ECF, 2006 WL 8437370, at *2 (N.D. Tex. Jan. 20, 2006) (discussing deference owed by court to administrator's decision under sliding-scale analysis and abuse of discretion standard in ERISA cases); *cf. Par. v. Aetna Life Ins. Co.*, No. CIV.A. 12-2315, 2013 WL 3974534, at *4 (Knowles, M.J.) (E.D. La. Aug. 2, 2013) (discussing possible existence and extent of conflict of interest in dual role of handling disability claims "with regard to any information sought regarding the compensation scheme, bonus structures and other pay incentives" as such, the court ordered "production only of company-wide policies [but] not of individual compensation records.") (citing *Crider v. Life Ins. Co. of N. Am.*, No. CIV.A. 3:07CV331-H, 2008 WL 239659, at *6 (W.D. Ky. Jan. 29, 2008) (in permitting discovery with respect to company-wide compensation, bonus performance evaluation standards, but not with respect to individual compensation records the court noted "[s]uch information could reveal the extent to which Defendant's 'own financial bottom line rather than the claimant's medical conditions' influenced employees in the decisions they reached" and, as such, "[t]his discovery is relevant to bias in the decision-making process.")).

In this case, Plaintiff did not make a claim pursuant to ERISA (*See* R. Doc. 9) and has dismissed his claims for emotional distress and all other extra-contractual damages which includes

any punitive damages pursuant to a claim of bad faith (*See* R. Doc. 45). In *Raab*, *Nye*, and *Pylant* each of those courts determined the individual's salary and compensation was confidential information to be protected via a protective order. Those cases, however, involved ERISA, punitive damages, and/or bad faith breach of contract. Where, as in here, those elements were never alleged or voluntarily dismissed, the Court struggles to see the relevancy of individual compensation records. This is particularly so when the compensation plans and employee performance templates documents produce show no indicia that employees are rewarded for denying claims. As such, the Court denies Plaintiff's motion with respect to Interrogatory No. 3.

## B. Interrogatory No. 6

Interrogatory No. 6 seeks the total number of reviews performed per year by the reviewing physicians Paul Revere relied on in denying this claim and the gross monetary compensation paid to such medical professionals (or paid by Paul Revere through an intermediary company, such as MES Solutions, RRS, PDA, Medical Consultant Network, etc.) for those reviews. R. Doc. 53-2, p. 10.

Defendant objects on the grounds as vague, over broad, and disproportional to the needs of the case. *Id.* Defendant also objects to the production of such information on the grounds that it is confidential, proprietary, and violates the rights of third parties as protested by Massachusetts Privacy Statute. *Id.* (citing Mass. Gen. L. c. 214, sec. IB). Defendant also objects on the grounds the information is not relevant where the individuals are not vested with the authority to terminate Plaintiff's benefits, and therefore, the outcomes of the reviews performed is not evidence of Paul Revere's bias. *Id.* (citing *Abromitis v. Cont'l Cas. Co./CNA Ins. Companies*, 114 F. App'x 57, 61 (4th Cir. 2004)). Notwithstanding, in response, Paul Revere produced its Annual Incentive Plan

and Total Compensation FAQ, Stock Incentive Plan in effect between 2017 and 2018, and its

Long-Term Incentive Deferred Cash FAQs in effect between 2017 and 2018.  R. Doc. 53-1, p. 4.

Plaintiff contends that this answer is deficient where Paul Revere did not provide the

amount paid to the medical professionals involved in Adoue's claim. *Id.* Plaintiff further contends

such information is relevant to whether they had a financial incentive to deny benefits. *Id.*

Defendant, in opposition, claims the documents provide evidence that compensation and

bonuses to medical professionals employed by Unum are not related to the approval or denial of

claims. R. Doc. 59, p. 8. As such, Defendant maintains the actual amounts paid to Unum

employees, including the medical professionals, is not relevant and is not discoverable; thus,

further production is not warranted. *Id.*

At the hearing, Plaintiff withdrew his motion with respect to Interrogatory No. 6. As such,

the Court denies Plaintiff's motion with regard to Interrogatory No. 6 as moot and for the reasons

stated above.

## C. Interrogatories Nos. 15, 16, and 17

Interrogatories Nos. 15, 16, and 17 seek information to explain the method of compensation

for all medical professionals or vocational consultants who were asked to give an opinion about

the Plaintiff's health or his occupation, whether the medical professionals or vocational consultants

who were asked to give an opinion about Plaintiff's health or his occupation receive company

stock as part of their compensation and/or if such professionals own stock in either Paul Revere or

Unum, and the basis upon which bonuses are awarded. R. Doc. 53-2, p. 6-17.

Subject to the aforementioned objections, Paul Revere responded that its medical, clinical

and vocational consultants who are full time employees are salaried and its physician contractors,

such as Drs. Bress and DiDonna, are paid an hourly rate. Paul Revere also contends full time

7

employees, such as Dr. Norris, are paid fixed salaries and are eligible to receive bonuses, but compensation is not tied to or based upon the outcomes of medical reviews by physician employees and contractors such as Dr. Bress are not eligible to receive bonuses. *Id.*

Plaintiff contends there is no violation of privacy by Paul Revere revealing whether its consultants receive company stock as part of their compensation program. R. Doc. 53-1, p. 5. Plaintiff further contends this information is relevant to whether its consultants had a financial incentive to provide an opinion that supported the denial of benefits. *Id.* As such, Plaintiff maintains Paul Revere must explain if the medical professionals, claims personnel, vocational consultants, and managers involved in Adoue's claim receive company stock as part of their compensation. R. Doc. 53-1, p. 6. In addition, Plaintiff contends Defendant's response to Interrogatory No. 17 is deficient where it fails to explain the basis upon which bonuses are awarded. R. Doc. 53-1, p. 5.

Defendant contends in a standard contract case, as opposed to an ERISA case, evidence of bias is in no way relevant to whether Adoue's claim decision is right or wrong. R. Doc. 59, p. 8-9. Defendant again reiterate amount of a particular employee's compensation is meaningless unless there is some evidence that it is tied to claim denials. R. Doc. 59, p. 9. As such, Defendant contends individual compensation records are not discoverable and evidence of company policies and compensation schemes satisfies the request. *Id.*

In addition, Defendant contends to the extent Plaintiff seeks stock compensation for all employees involved in this claim, to include claims personnel and managers, that it has no obligation to answer a question it was no originally asked. *Id.* Defendant explains Interrogatories Nos. 15, 16, and 17 are limited to compensation of "medical professionals or vocational

consultants". *Id.* As such, the Defendant maintains that the Plaintiff cannot expand the scope of its discovery requests through a motion to compel or memorandum in support. *Id.*

The Court as an initial matter notes Interrogatories Nos. 15, 16, and 17 only refer to medical and vocational experts. R. Doc. 53-2, p. 17-18. The Plaintiff did not originally seek information as to all of its employees involved in this claim, to include claims personnel and managers, and is not permitted to expand the scope of his discovery request in his motion to compel. As such, to the extent the Plaintiff now seeks company stock compensation with regard claims personnel and managers, the Defendant's objection is sustained.

Specifically, considering Interrogatory No. 15, Plaintiff seeks an explanation of "the method of compensation for all medical professionals or vocational consultants who were asked to give an opinion about the Plaintiff's health or his occupation." R. Doc. 53-2, p. 16. Defendant Paul Revere explained in response that that its "medical, clinical and vocational consultants who are full time employees are salaried" and its physician contractors are paid an hourly rate. *Id.* Defendant also explicitly indicates that Dr. Bress and Dr. DiDonna were paid on an hourly rate. *Id.* The Court finds that this adequately answers Plaintiff's interrogatory seeking the methods of compensation and denies Plaintiff's motion to the extent it seeks to compel any further answer in response to Interrogatory No. 15.

Next, to the extent Plaintiff seeks the actual stock compensation amounts for medical and vocational experts, the Court reiterates, while financial incentive may be important in ERISA cases that allege bad faith and seek punitive damages, here the sole question for the fact-finder is contractual in nature. While the Plaintiff may be entitled to know broadly how Paul Revere compensates its medical and vocational experts through company stocks, courts in the Fifth Circuit

9

do not permit for the discovery of individual's compensation without some shred of evidence of wrongdoing or allegations to the same.

Notwithstanding, Interrogatory No. 16 only seeks an explanation of "whether the medical professionals or vocational consultants who were asked to give an opinion about Plaintiff's health or his occupation receive company stock as part of their compensation and/or if such professionals own stock in either Paul Revere or Unum." R. Doc. 53-2, p. 17. As such, the Court is of the opinion that this request does not seek an individual's specific compensation amount. To the contrary, this only seeks a simple yes or no answer as to whether the medical professionals or vocational consultants who were involved in the decision to deny disability benefits under Plaintiff's insurance policy actually participated in the stock option regardless of their return.

The Court, here, is of the opinion that this is the sort of broad knowledge that Plaintiff is entitled to seek where is does not require inquiry into any one person's actual finances. The answer provided in response, discussing a person's eligibility to participate, simply does not satisfy this request where the request is more centered around actual participation in the stock compensation. The Court, therefore, finds for each medical profession or vocational consultant who was asked to give an opinion about the Plaintiff's health or his occupation that the Defendant provide a yes or no answer indicating whether that person exercised their right to procure company stock as compensation. As such, the Court grants Plaintiff's motion with respect to Interrogatory No. 16.

In addition, the Court finds that Defendant's response to Interrogatory No. 17 is not satisfactory. The Plaintiff asks the Defendant to explain the basis upon which bonuses are awarded. In response, the Defendant discusses who is eligible for bonuses and states bonuses are unrelated to denial of claims benefits. R. Doc. 53-2, p. 18. This answer fails to include any qualitative factors Paul Revere uses in deciding whether to award bonuses. Courts have held this information can

evidence are relevant to the decision-making process. *See Aetna Life Ins.*, 2013 WL 3974534, at

*4 (permitting discovery of information sought regarding the compensation scheme, bonus

structures and other pay incentives on company-wide basis and not individual level) (citing *Crider*,

2008 WL 239659, at *6 (permitting of company-wide compensation and bonus performance

evaluation standards). As such, Plaintiff is entitled to know how Paul Revere, on a company-wide

basis, decides to award bonuses. As such, the Court grants Plaintiff's request with respect to

Interrogatory No. 17.

### D. Request for Production No. 12

Request for Production No. 12 seeks a copy of the monthly, interim, and annual

performance evaluations for the years 2010 to present for the individuals who were involved in

Plaintiff's claim, including without limitation claims personnel, medical reviewers, or vocational

consultants. R. Doc. 53-2, p. 28.

The Defendant again objects on the grounds as vague, over broad, and disproportional to

the needs of the case. *Id.* The Defendant also objects to the production of such information on the

grounds that it is confidential, proprietary, and violates the rights of third parties as protested by

Massachusetts Privacy Statute. *Id.* (citing Mass. Gen. L. c. 214, sec. IB).

Plaintiff maintains this information is relevant as to whether the personnel who provided

opinions on Plaintiff's claims have financial incentive to deny claims and whether they are

qualified and competent in making decisions that are extremely important to claimants. R. Doc.

53-1, p. 6-7. Plaintiff further contends performance evaluation documents may reflect upon the

Defendant's state of mind with respect to claim handling behavior as evidenced through the way

they rate and comment upon employee performance. R. Doc. 53-1, p. 7. As such, Plaintiff

maintains those documents can establish that claim personnel are improperly motivated by the

promise of rewards for meeting goals, or by fear of losing out financially if their annual claim

payments exceed those amounts authorized. *Id.* In addition, Plaintiff contends just because Paul

Revere's compensation plan does not expressly state that its employees would be paid more or

promoted if they deny claims that does not mean that pressure to deny claims is not applied in

other ways.[1] R. Doc. 53-1, p. 8.

The Defendant reiterates that because the information thus far produced clearly establishes

that there is no financial incentive for employees to deny claims, the interest in individual

employees' privacy clearly outweighs the interest in the discovery of private information that is

unrelated to any issue in this case. R. Doc. 59, 9-10. As such, Paul Revere contends that its

responses are sufficient. R. Doc. 59, p. 10.

This Court has before found performance evaluations of those employees who reviewed

plaintiff's claim are discoverable in ERISA cases. *See, e.g., Parish*, 2013 WL 3974534, at *4;

*Wittmann v. Unum Life Ins. Co. of Am.*, No. CV 17-9501, 2018 WL 1912163, at *3 (Wilkinson,

M.J.) (E.D. La. Apr. 23, 2018), *on reconsideration*, No. CV 17-9501, 2018 WL 2970873 (E.D. La.

June 13, 2018) (ordering production of redacted performance evaluations where "[t]he information

sought is relevant to the existence and extent of defendant's conflict of interest.").

Notwithstanding, the same conflict of interest that permeates ERISA cases, is not as

poignant here, and, in this case, Plaintiff has not presented a specific and compelling reason to

allow discovery of employee personnel files to include performance evaluations. *See, e.g.,*

*Rinehart v. Life Ins. Co. of N. Am.*, No. C08-05486-RBL, 2009 WL 2240286, at *2-3 (W.D. Wash.

July 27, 2009) (noting the employee may seek the larger policy or practice, or how it trains and

---

[1] Plaintiff explains, that sometimes a performance evaluation may reveal things such as targets on closures, the quality of one's work, whether personnel are truly walled off from company finances, etc. The Court will discuss the proper standard to evaluate relevancy in response to his Request for Production 16 and 19.

provides incentives for its employees, or general information regarding the criteria and process used to evaluate employee performance). The Court, therefore, finds this information is not relevant. As such, the Court denies Plaintiff's motion with regard to Request for Production No. 12.

### E. Requests for Production Nos. 16 and 19

Finally, Request for Production No. 16 seeks documents relating to any reports or investigations of claims handling practices by any Insurance Commissioner or regulatory authority within the last ten (10) years. R. Doc. 53-2, p. 31. Defendant again objects on the grounds as vague, overbroad, and disproportionate to the needs of the case. *Id.* Defendant also object to the extent it seeks information protected by third party privileges who have a legitimate expectation of privacy in their personal information. *Id.*

Request for Production No. 19 seeks, for the past ten years, each document identifying each complaint filed against Defendant with an administrative agency (including but not limited to a state insurance regulator) by an insured that was denied short- or long-term disability benefits. R. Doc. 53-2, p. 33. Plaintiff clarified the names of the insureds can be redacted in order to protect their privacy. *Id.* Defendant again objects on the grounds as vague, over broad, and disproportional to the needs of the case. *Id.* Defendant also object to the extent it seeks information protected by third party privileges who have a legitimate expectation of privacy in their personal information. *Id.*

Plaintiff contends that the information sought is directly relevant to whether Paul Revere has a history of biased claims administration and/or claims practices. R. Doc. 53-1, p. 9-10, 14. In addition, Plaintiff contends Paul Revere fails to explain how the information he seeks is confidential. R. Doc. 53-1, p. 9. The Plaintiff explains it is well known that Paul Revere and its

parent, UNUM, have been involved in regulatory settlement agreements, in which they were reprimanded for things such as excessive reliance of in-house physicians. R. Doc. 53-1, p. 10. Because, in Adoue's case, Paul Revere relied exclusively on opinions of its in-house physicians to deny the claim, which was a point of concern in at least one of its regulatory settlement agreements, Plaintiff maintains this information is highly relevant. *Id.*

Defendant, in opposition, contends that there is no substantive limitation on Plaintiff's request regarding the nature of the complaint, the type of policy at issue or the disposition of the complaint. R. Doc. 59, p. 10. The Defendant points the Court's attention to the fact that there are no allegations in the complaint that defendant engaged in a pattern or practice of wrongly denying claims. *Id.* Louisiana does not authorize claims for extra-contractual, punitive or exemplary damages, and Plaintiff's only available penalty is limited to an amount equal to the amount of past benefits are due. R. Doc. 59, p. 15. Defendant maintains bad faith is not relevant to the case where the only applicable statute only makes mention to whether Paul Revere had just and reasonable grounds to deny the claim. *Id.*

The Plaintiff, in response, directed the Court's attention to *Wakkinen* and *Singleton* as cases in which UNUM was involved in regulatory settlement agreements, for which they were reprimanded for things such as excessive reliance on in-house physicians. *See Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 582 (8th Cir. 2008); *Singleton v. Hartford Life & Accident Ins. Co.*, No. 4:08-CV-00361-WRW, 2008 WL 3978680, at *1 n. 12 (E.D. Ark. July 29, 2008).

Since that time, however, courts have determined that UNUM's alleged biased claims history from over a decade ago is less relevant. In *Truitt*, the Fifth Circuit recognized that UNUM adopted a new claims-handling practice and it would no longer "assume UNUM is biased every time it denies a claim merely because it has a parsimonious claims-granting history." *Truitt v.*

14

*Unum Life Ins. Co. of Am.*, 729 F.3d 497, 514 (5th Cir. 2013) (noting district court's improper emphasis UNUM's structural conflict).

Recently, this Court denied Plaintiff's request for information about previously investigated and adjusted claims. *Wittmann*, 2018 WL 1912163, at *5. In coming to that decision, the Court relied heavily on *Caldwell v. UNUM*, which considered the minimal relevance of statistical evidence of systematic bias. *Id.* (noting the collection of this type of information is a significant burden on the defendant) (citing *Caldwell v. UNUM Life Ins. Co. of Am.*, No. 16-CV-236-S, 2017 WL 5591711, at *1 (D. Wyo. May 3, 2017)).

As an initial matter, the Court disagrees with Plaintiff's contention that *Wittmann* and *Caldwell* are inapposite where he does not seek statistical information but rather a list of conduct examinations and regulatory settlement agreements. Simply because the Plaintiff's requests do not specifically seek a batting average or statistical type discovery, do not render them relevant. In fact, Plaintiff's requests in *Wittmann* mirror the requests Plaintiff seeks the Court compel today.[2] *See Wittmann*, 2:17-cv-09501, R. Doc. 16-4, p. 8-9, 12.

---

[2] The Court takes special note of the fact that while the *Caldwell* court discussed the minimal value of statically data, in *Wittmann* the Plaintiff's request did not seek such. Still, this Court denied Plaintiff's motion to compel seeking investigation and disciplinary documents regardless of whether Defendant first had to create the statistics. *See Wittmann*, 2:17-cv-09501, R. Doc. 16-4, p. 8-9, 12.

INTERROGATORY NO. 13:
Have you been investigated by any insurance commission or disciplinary or regulatory body in the last ten years regarding any plan, including but not limited to those for which you have acted as benefits administrator and which you have also funded, in whole or in part, as underwriter?

INTERROGATORY NO. 14:
Has any disciplinary action been imposed on you by any insurance commission or disciplinary or regulatory body, for any infraction—including but not limited to a violation of any state's insurance code or a finding by a federal court that you abused your discretion in the review of a claim—in the last ten years regarding any plan, including but not limited to for which you have acted as benefits administrator and which you have also funded, in whole or in part, as underwriter?

REQUEST FOR PRODUCTION NO. 10:
Produce any notice of investigation, investigative findings or other documentation pertaining to the investigations identified in your response to Interrogatory No. 13.

Moreover, while Plaintiff contends this sort of information is regularly produced to show a pattern of misconduct, none of those cases cited by the Plaintiff neither involve UNUM or Paul Revere nor consider a claim that in which the plaintiff does not seek extracontractual damages. In addition, in those cases cited by Plaintiff, the courts found the regulatory complaint and settlement history more relevant on the basis of the plaintiff's allegations of fraud, bad faith, and/or claims pursuant to RICO which involved an extensive pattern of racketeering activity in the handling of disability claims. *See, e.g., Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 681 (N.D. Ala. 2015), *as amended* (July 10, 2015) (discussing relevance to RICO claims); *Eberlein v. Provident Life & Acc. Ins. Co.*, No. 06-CV-02454-PAB-MJW, 2009 WL 353516 (D. Colo. Feb. 12, 2009); *Beattie v. Provident Life & Accident Ins. Co.*, No. 04CV896-W(LSP), 2005 WL 8166041 (S.D. Cal. Sept. 23, 2005); *Cunningham v. Standard Fire Ins. Co.*, No. CIVA 07CV02538REBKLM, 2008 WL 2902621, at *1 (D. Colo. July 24, 2008). The facts presented in those cases are simply too dissimilar for the Court to give those decisions persuasive value in this instant matter.

In addition, all of the cases were decided prior 2015 and before the 2015 Amendment to Federal Rule of Civil Procedure 26. *See, e.g., Eberlein*, 2009 WL 353516, at *1 (noting "this discovery may lead to admissible evidence on Plaintiff's bad faith claim, punitive damages claim, and Colorado Consumer Protection Act claim"). In 2015, the Federal Rule of Civil Procedure 26 was amended to reflect "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense . . ." 2015 Amendment, Comment to Fed. R. Civ. Pro. 26. This

---

REQUEST FOR PRODUCTION NO. 11:
Produce any documentation pertaining to the disciplinary actions identified in your response to Interrogatory No. 14.

*Id.*

current standard of discoverability is more limited to direct relevance as opposed to the previous version of Rule 26 that stipulated information is relevant if it is "likely to lead to the discovery of relevant evidence." *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 6134190, at \*4 (Roby, M.J.) (E.D. La. Nov. 19, 2019). Here, the Plaintiff can cite to no case, and the Court can find none, that supports his position that regulatory settlements and target market conduct examinations are directly relevant.

Moreover, none of these cases cited by Plaintiff come from within the Fifth Circuit. In fact, in providing the Plaintiff the chance to supplement his position and provide this Court with authority from this circuit that supports Plaintiff's contention that regulatory settlement and target market conduct examination documents are discoverable (*See* R. Doc. 65), Plaintiff admitted that he is "unaware of any cases that discuss specifically the relevancy of target market conduct examinations and regulatory settlement agreements." As such, the Court affords the cases cited by Plaintiff little persuasive value in comparison to *Wittmann*, which is directly on point and from this district.

Finally, the Court notes the *Wittmann* court did not reach its decision based on solely on relevance, but on grounds of proportionality and burden to the insurance companies. Regulatory settlement agreements and market conduct examinations are a matter of public record and accessible to the Plaintiff via the internet and regulatory agencies webpages.[3] Plaintiff admitted that even the reports that he has were not produced as a result of discovery propounded in this case or others, but as a result of networking with other attorneys who practice in this area of law and through his own research. In addition, Plaintiff provides no evidence that a market conduct

---

[3] The Court notes that certain documents are retrievable, for example, via the United States Securities and Exchange Commission's and the State of Tennessee's Government website.

examination was conducted during the timeframe in which Paul Revere was considering his claim or by an authority, *e.g.*, the State of Louisiana, whose input would be salient in this diversity case, which could bolster the relevancy of these documents in this matter.[4] As such, the Court finds the burden of gathering these publicly available documents outweighs these documents minimal relevance in this case. The Court, therefore, denies Plaintiff's motion with respect to Requests for Production Nos. 16 and 19.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion to Compel (R. Doc. 53)** be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion be **GRANTED** with respect to Interrogatory Nos. 16 and 17.

**IT IS FURTHER ORDERED** that the motion be **DENIED** with respect to Interrogatory Nos. 3, 6, and 15, as well as Requests for Production Nos. 12, 16 and 19.

New Orleans, Louisiana, this 19th day of August 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] The Court, here, also notes that in its supplemental brief Defendant Paul Revere stipulated that it is not aware of any market conduct examinations conducted by the State Louisiana within the last ten (10) years.

